# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

In re:

INTERFACE NETWORK SYSTEMS, INC.   Case No. 8:19-bk-04569-CED
                                   Chapter 11
    Debtor.
_____/

## CREDITOR JOHN J. OMLOR & ASSOCIATES, INC.'S
## MOTION FOR ADEQUATE PROTECTION

Creditor John J. Omlor & Associates, Inc. ("JJO") by and through its undersigned attorneys hereby files this Motion for Adequate Protection ("Motion"), and states:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### Factual Background

3. On May 15, 2019 (the "Petition Date"), Interface Network Systems, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4. Pre-petition, on or about January 1, 2019, Debtor executed and delivered to JJO a Promissory Note in the original principal amount of $400,000.00 (the "Note"). While the interest due under the Note is 12% annually, the current contractual monthly payment under the Note is $8,897.78. The Note is fully amortized over its 48-month term. A true and correct copy of the Note is attached hereto as **Exhibit A.**

5. As security for the Note, on or about January 1, 2019, Debtor executed and delivered to JJO a Security Agreement (the "Security Agreement"), pledging as security

substantially all of Debtor's goods, inventory, equipment, accounts receivable, figures and all other assets (the "Collateral"). The Collateral was further securitized by the filing of a UCC-1 Financing Statement on March 6, 2019, instrument number 201907948846. A true and correct copy of the Security Agreement and UCC-1 Financing Statement are attached hereto as **Exhibits B and C**.

6. Payments to JJO were current as of the Petition Date. The contractual monthly payments to JJO under the Note are $8,897.78, and the total outstanding indebtedness as of the Petition Date is $374,999.47, as reflected in Proof of Claim No. 5.

7. Upon information and belief based upon a UCC search, JJO is in (a) second position with respect to certain of the Collateral (namely accounts receivable generally), behind Shirley A. Omlor Revocable Trust, (b) in third position as to certain receivables factored by Capital Funding Solutions, Inc., and (c) in potentially fifth position with respect to certain other of its Collateral (namely inventory and equipment).[1] This necessitates that JJO continue to be compensated for the usage thereof, and constitutes cause to grant adequate protection payments to JJO as provided below.

## Adequate Protection

8. JJO is entitled to adequate protection, as defined in § 361 of the Code, pursuant to § 362(d)(1). The Bankruptcy Code does not define "adequate protection," but § 361 provides debtors a nonexclusive list of acceptable methods of providing adequate protection to a secured creditor for use of its collateral, including cash payment or periodic payments, granting of a replacement lien, or providing the indubitable equivalent of the secured creditor's interest in the

---

[1] Creditor Capital Funding Solutions, Inc. appears to have a security interest originated in 2016 but that security interest does not appear to attach to all accounts receivable, but instead as to those factored by Capital Funding Solutions, Inc. Transportation Alliance Bank appears to have a security interest originated in 2016 but that security interest does not appear to attach to accounts receivable. Further creditor FFE Services, LLC likewise appears to have a security interest originated in 2017 but that security interest does not appear to attach to accounts receivable.

collateral. 11 U.S.C. § 361. Adequate protection is intended to safeguard the secured creditor's right to have the value of its secured claim, as it existed on the petition date, preserved. *United States Sav. Ass'n v. Timber of Inwood Forest Assocs.*, 484 at 370. "The purpose of Section 361 is to insulate the interest of a secured creditor in a debtor's property from diminution of value resulting from the delay in enforcing its rights occasioned by a debtor's need for time to work out its problems and reorganize its business under the protection of the automatic stay…" *In re Karl A. Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981) (citation omitted).

9. JJO requests, and the Debtor has agreed, adequate protection as follows:

   a) Grant JJO a replacement lien in the Collateral to the same extent and with the same validity and priority as its prepetition lien, without the need to file or execute any documents as may otherwise be required under applicable non-bankruptcy law;

   b) Pay contractual monthly adequate protection payments in the amount of $8,897.78 *nunc pro tunc* to the Petition Date.

   c) Maintain insurance on the Collateral and provide adequate proof of insurance to JJO; and add JJO as a loss payee and/or additional insured with respect to such insurance.

   d) Deliver any and all other instruments and documents and do or cause to be done all such additional acts and things that are reasonably necessary and proper in order to give effect to JJO's security interest.

**WHEREFORE**, JJO respectfully requests this Court enter an Order: (i) granting JJO adequate protection as described herein; and (ii) granting JJO such other and further relief as the Court deems appropriate.

Dated: June 11, 2019

                                            */s/ Stephanie C. Lieb*
STEPHANIE CRANE LIEB
Florida Bar No. 0031806
slieb@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
 FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Boulevard, Suite 2700
Tampa, Florida  33602
Tel:  (813) 223-7474
Fax:  (813) 229-6553

*Attorneys for John J. Omlor & Associates, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 11, 2019, a true and correct copy of the foregoing was furnished by CM/ECF to all registered **CM/ECF recipients** and/or U.S. Mail to:

**Interface Network Systems, Inc.**
6304 Benjamin Road, Suite 502
Tampa, FL 33634

**Buddy D. Ford, Esq**
buddy@tampaesq.com
**Jonathan A. Semach, Esq.**
jonathan@tamaesq.com
Buddy D. Ford, P.A.
9301 West Hillsborough Avenue
Tampa, FL 33615-3008

**United States Trustee – TPA**
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602
Nicole.w.peair@usdoj.gov

**Capital Funding Solutions**
2021 Tyler Street, Suite 208
Hollywood, FL 33020

**Financial Servicing, LLC**
2005 Market Street, 14th Floor
Philadelphia, PA 19103

**Fundation**
11501 Sunset Hills Road, Suite 100
Reston, VA 20190

**Kalamata**
7315 Wisconsin Avenue E, Tower, Suite 950
Bethesda, MD 20814

**Shirley A. Omlor Revocable Trust**
4912 58th Avenue
Saint Petersburg, FL 33715

**Corporation Service Co. as Representative**
PO Box 2576
Springfield, IL 62708

**FFE Services LLC as Representative**
244 Madison Avenue, Suite 379
New York, NY 10016

**Graybar Financial**
11885 Lackland Road
Saint Louis, MO 63146

**Transportation Alliance Bank**
4185 Harrison Boulevard, Suite 200
Ogden, UT 84403

/s/ *Stephanie C. Lieb*
Attorney

# **EXHIBIT A**

# PROMISSORY NOTE

$400,000.00                                                    January 1, 2019

      FOR VALUE RECEIVED, the undersigned, **INTERFACE NETWORK SYSTEMS, INC.** (hereinafter collectively, the "Maker") promise to pay to the order of **JOHN J. OMLOR & ASSOCIATES, INC.** at 4912 58th Street South, St. Petersburg, FL 33715 or elsewhere as directed from time to time in writing by the holder hereof, the principal sum outstanding hereunder from time to time together with interest thereon computed from the date of this Promissory Note (hereinafter the "Note") at twelve percent (12%) per annum (hereinafter the "Interest Rate"), together with any and all charges hereunder, provided however, all such interest and other charges constituting interest, howsoever characterized or computed, shall not exceed the maximum legal contract rate permitted from time to time under applicable law.

      The Principal and interest shall be payable in sixty (60) monthly installments of Eight Thousand eight hundred ninety-seven and 78/100 Dollars ($8,897.78) commencing January 31, 2019 and continuing through and including December 31, 2023.

      Nothing herein, nor any transaction related hereto, shall be construed to so operate as to require Maker to pay interest at a greater rate than shall be lawful. Should any interest or other charges paid by Maker in connection with the loan evidenced by this Note result in the computation or earning of interest in excess of the maximum contract rate of interest which is legally permitted under applicable law, then any and all such excess shall be, and the same is, hereby waived by the holder, and any and all such excess shall be automatically credited against and in reduction of the balance due under this Note, and any portion which exceeds the balance due under this Note shall be paid by the holder to Maker.

      Maker shall have the right to prepay this Note in whole or in part at anytime without any additional compensation being due and payable to holder because of the prepayment. Prepayments shall first be applied to the interest due and then to the remaining principal.

      Maker waives the right of exemption under the laws of the State of Florida and waive presentment, protest and demand, notice of protest, demand and of dishonor and non-payment of this Note.

{00090660.DOC;1}

1

Maker further agrees, to pay all attorneys', paralegals' and expert witness fees and costs in case the principal of this Note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof. All such fees and costs include, but are not limited to, those incurred at any pre-litigation attempts to settle the matter, at any mediation, at any arbitration, at any appellate level, and in any bankruptcy proceeding, including any bankruptcy proceeding wherein the holder is attempting to lift any automatic stays.

Upon non-payment or default in the payment of the principal or interest due hereunder or upon default by Maker for a period of thirty days, all payments due hereunder and remaining unpaid, shall, at the holder's option, forthwith become due and payable notwithstanding their tenor. The indebtedness hereunder shall bear interest at the highest lawful rate of interest per annum from and after the date of any default.

INTERFACE NETWORK SYSTEMS, INC.

By: _____(SEAL)
        DAVID OMLOR, President

{00090660.DOC;1}

# **EXHIBIT B**

## SECURITY AGREEMENT

This Security Agreement is made by and between INTERFACE NETWORK SYSTEMS, INC., a Florida Corporation, whose address is 6304 Benjamin Road, Suite 502, Tampa, FL 33634 (the "Borrower"), and JOHN J. OMLOR & ASSOCIATES, INC., whose address is 4912 58th Street South, St. Petersburg, FL 33715 (the "Secured Party"). The parties agree as follows:

1. Collateral. The Collateral subject to this Security Agreement consists of all goods, inventory, equipment, accounts receivable, fixtures and all other assets of the Borrower as they may exist from time to time from and after the date hereof, including, without limitation, (a) accounts; (b) goods for sale, lease or other disposition by Borrower which have given rise to accounts and have been returned to or repossessed or stopped in transit by Borrower; (c) chattel paper, electronic chattel paper, tangible chattel paper, documents of title, instruments, documents, general intangibles, payment intangibles, letter of credit rights, letters of credit and supporting obligations; (d) goods, including, without limitation, inventory, equipment, fixtures, trade fixtures and vehicles; (e) investment property; (f) deposits, cash, cash equivalence and any property Borrower now or hereinafter in the possession, custody or control of Secured Party; (g) deposit accounts held with any depository institution; (h) all other personal property of Borrower of any nature; and all cash and non-cash proceeds of all of the foregoing property including, but not limited to proceeds of all insurance policies insuring the foregoing.  Borrower hereby authorizes Secured Party to file and perfect any and all statutory lien rights and any rights under indemnity or performance bonds at any time regardless of whether payment is due to Secured Party under Secured Party's payment terms with Borrower. Borrower shall execute and deliver to Secured Party, at any time and from time to time, all agreements, instruments, documents and other written matter (the "Supplemental Documentation") that Secured Party may request, in form and substance acceptable to Secured Party to perfect and maintain Secured Party's priority security interest and lien to all of the collateral provided herein, and to otherwise consummate the transactions contemplated by this paragraph. Borrower irrevocably, hereby makes, constitutes and appoints Secured Party, and all persons designated by Secured Party for that purpose, Borrower's true and lawful attorney and agent-in-fact, to sign in the name of Borrower on the Supplemental Documentation, if required, and to deliver such Supplemental Documentation to such persons as Secured Party may reasonably elect. Borrower hereby authorizes Secured Party to prepare and file and Uniform Commercial Code ("UCC") financing statements, amendments to UCC financing statements and any other filings or recordings in all jurisdictions where Secured Party determines appropriate without Borrowers signature, and authorizes Secured Party to describe the collateral in such financing statements in any manner as Secured Party determines appropriate.

2. Security interest. Borrower grants to Secured Party a security interest in the Collateral described above to secure (a) the payment, performance and other obligations contained in the Promissory Note, dated January 1, 2019, and (b) any and all modifications, extensions, or renewals of said secured promissory note.

3. Warranties and Representations of Borrower. The Borrower owns the Collateral and has authority to grant this security interest. The Borrower warrants and represents that the Collateral is free and clear of any security interest (other than the security interest granted in this

{00090663.DOC;1}

Security Agreement), liens, restrictions, or encumbrances. Except for that in favor of the Secured Party, no financing statement covering the Collateral is filed in any public office. The Borrower has full right and power to transfer the Collateral to the Secured Party free and clear and to enter into and carry out this Security Agreement.

4. Obligations of the Borrower.

    4.1. *Location.* The parties recognize that the Collateral is to be used by the Borrower in an ongoing business. Except as such Collateral may be sold, transferred, or used as part of the daily activities of the business, the Collateral shall remain in the Borrower's possession or control at all times, except as otherwise provided in this Security Agreement.

    4.2. *Protection.* The Borrower shall defend the Collateral against all claims and demands adverse to the Secured Party's interest in it and shall keep it free from all liens except those for taxes not yet due and from all security interests except this one. The Borrower shall maintain the Collateral in good condition and protect it against misuse, abuse, waste, and deterioration except for ordinary wear and tear resulting from its intended use.

    4.3. *Secured Party's costs.* The Borrower shall pay all expenses incurred by the Secured Party in obtaining, preserving, perfecting, defending, and enforcing this security interest and in collecting or enforcing the Secured Promissory Note described above. Such fees and expenses shall include, but are not limited to, reasonable attorneys' fees, filing fees, publication expenses, deposition fees, stenographer fees, witness fees, and any other court costs. These expenses shall be part of the obligation and shall be recoverable as such in all respects.

    4.4. *Additional documents.* The Borrower shall sign any papers that the Secured Party considers necessary to obtain, maintain, and perfect this security interest or to comply with any relevant law.

    4.5. *Notice of changes.* The Borrower shall immediately notify the Secured Party of any material change in the Collateral; change in Borrower's name, address, or location; change in any matter warranted or represented in this Security Agreement; and any event of default.

5. Default.

    5.1. *Event of default.* The Borrower shall be in default in the event: (a) that the Borrower fails to timely observe, keep, or perform any covenant, agreement, or condition required by this Security Agreement to be observed, kept, or performed; (b) that the Borrower fails to timely pay the Borrower's obligations evidenced by the aforesaid Secured Promissory Note as provided by its terms; (c) that the Borrower makes any warranty, representation, or statement that proves to have been false in any material respect; (d) any part of the Collateral has been levied, seized, or attached; (e) the indebtedness secured by this Security Agreement or the performance of this Security Agreement has been impaired; or (f) the dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the Collateral, assignment for the benefit of creditors, or commencement of any proceeding in any bankruptcy

or under any insolvency law by or against the Borrower or any guarantor or surety for the Borrower.

      5.2. *Upon default.* During the existence of any event of default, the Secured Party may declare the unpaid principal of the obligation immediately due in whole or in part, enforce the obligation, and exercise any rights and remedies granted by Chapter 679 of the Florida Statutes (the Uniform Commercial Code – Secured Transactions), by this Security Agreement, or otherwise available at law including the following:

    (a)    require the Borrower to deliver to the Secured Party all books and records relating to the Collateral;

    (b)    require the Borrower to assemble the Collateral and make it available to the Secured Party at a place reasonably convenient to both parties;

    (c)    take possession of any of the Collateral and for this purpose enter any premises where it is located if this can be done without breach of peace;

    (d)    sell, lease, or otherwise dispose of any of the Collateral in accord with Chapter 679 of the Florida Statutes;

    (e)    apply any proceeds from disposition of the Collateral after default in the manner specified in Chapter 679 of the Florida Statutes, including payment of the Secured Party's reasonable attorneys' fees and court expenses; and

    (f)    if disposition of the Collateral leaves the obligation unsatisfied, collect the deficiency from the Borrower.

      5.3. *Cumulative remedies.* Foreclosure of this security interest by suit does not limit the Secured Party's remedies, including the right to sell the Collateral under the terms of this Security Agreement. All remedies of the Secured Party may be exercised at the same or different times, and no remedy shall be a defense to any other. The Secured Party's rights and remedies include all those granted by law or otherwise, in addition to those specified in this Security Agreement.

      6.   <u>Notice.</u>  Any notice or other communication under this Security Agreement is sufficiently given if delivered personally or sent by certified mail, postage prepaid, to the party at the address indicated below, or at such other addresses as shall be furnished in writing by either party to the other, and shall be deemed to have been given as of the date so delivered or deposited in the United States mail.

      7. <u>Binding effect.</u> This Security Agreement and the security interest it creates shall inure to the benefit of the Secured Party's heirs, executors, or administrators, and shall bind the Borrower and Borrower's heirs, executors, administrators, legal representatives, successors in interest, and assigns.

8. <u>General provisions.</u>

    8.1. *Modifications.* No provision of this Security Agreement may be modified or limited except by written agreement.

    8.2. *Waiver.* Neither delay in exercise nor partial exercise of any of the Secured Party's remedies or rights shall waive further exercise of those remedies or rights. The Secured Party's failure to exercise remedies or rights does not waive subsequent exercise of those remedies or rights. The Secured Party's waiver of any default does not waive further default. The Secured Party's waiver of any right in this Security Agreement or of any default is binding only if it is in writing.

    8.3. *Severability.* If any provision of this Security Agreement is for any reason found to be unenforceable, all other provisions nevertheless remain enforceable.

    8.4. *Applicable law.* The law of the State of Florida shall apply to the construction and enforcement of this Security Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, the parties have caused this Agreement to be executed this ___ day of January, 2019, but and effective as of January 1, 2019.

WITNESSES:

_Stanley H. Sanford_
Print name: Stanley H. Sanford

_Travis McGee_
Print name: TRAVIS E. MCGEE

INTERFACE NETWORK SYSTEMS, INC.

By: _/s/ David Omlor_
David Omlor,
President

BORROWER

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me this __1__ day of __January__, 20__19__, on behalf of INTERFACE NETWORK SYSTEMS, INC., effective January 1, 2019, by DAVID OMLOR, its President, who is personally <u>known</u> to me or who has produced _____ as identification.

_Donna C. Alvarez_
Print name: Donna C. Alvarez

DONNA C. ALVAREZ
Notary Public - State of Florida
Commission # FF 930050
My Comm. Expires Nov 6, 2019
Bonded through National Notary Assn.

My commission expires: 11-6-19

5.

{00090663.DOC;1}

WITNESSES:

*signature*
Print name: Stanley H. Sanford

*signature*
Print name: Travis McGee

JOHN J. OMLOR & ASSOCIATES, INC.

By: *signature*
John J. Omlor

SECURED PARTY

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me this __1__ day of __January__, 20__19__, by on behalf of JOHN J. OMLOR & ASOCIATES, INC., effective January 1, 2019, by JOHN J. OMLOR, who is <u>personally known</u> to me or who has produced _____ as identification.

*signature*
Print name: Donna C. Alvarez

Notary Public

[Notary Seal: DONNA C. ALVAREZ, Notary Public - State of Florida, Commission # FF 930050, My Comm. Expires Nov 6, 2019, Bonded through National Notary Assn.]

My commission expires: 11-6-19

{00090663.DOC;1}

6.

# **<u>EXHIBIT C</u>**

FLORIDA SECURED TRANSACTION REGISTRY
**FILED**
2019 Mar 06 AM 08:00
**** 201907948846 ****
***C * 02251995462301-35.00***35.00***
***C * 03061995610101-6.00***.00***

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
A. 813-223-5351    B. srief@allendell.com
**B. Email Address**
**C. SEND ACKNOWLEDGEMENT TO:**
Name: Frank J. Rief, III
Address: Allen Dell, P.A.
Address: 202 S. Rome Avenue, Suite 100
City/State/Zip: Tampa, FL 33606

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Interface Netowork Systems, Inc. | | | |
| 1.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Omlor | David | | |
| 1.c MAILING ADDRESS Line One | | | |
| 6304 Benjamin Road, Suite 502 | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | Tampa | FL | 33634 | U.S. |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2.c MAILING ADDRESS Line One | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| John J. Omlor & Associates, Inc. | | | |
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Omlor | John | J. | |
| 3.c MAILING ADDRESS Line One | | | |
| 4912 58th Avenue South | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | St. Petersburg | FL | 33715 | |

**4. This FINANCING STATEMENT covers the following collateral:**

The Collateral subject to this UCC filing consists of all goods, inventory, equipment, accounts receivable, fixtures and all other assets of the Borrower as they may exist from time to time from and after the date hereof, including, without limitation, (a) accounts; (b) goods for sale, lease or other disposition by Borrower which have given rise to accounts and have been returned to or repossessed or stopped in transit by Borrower; (c) chattel paper, electronic chattel paper, tangible chattel paper, documents of title, instruments, documents, general intangibles, payment intangibles, letter of credit rights, letters of credit and supporting obligations; (d) goods, including, without limitation, inventory, equipment, fixtures, trade fixtures and vehicles; (e) investment property; (f) deposits, cash, cash equivalence and any property Borrower now or hereinafter in the possession, custody or control of Secured Party; (g) deposit accounts held with any depository Institution; (h) all other personal property of Borrower of any nature; and all cash and non-cash proceeds of all of the foregoing property including, but not limited to proceeds of all insurance policies insuring the foregoing.

**5. ALTERNATE DESIGNATION (if applicable)** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ AG LIEN ☐ NON-UCC FILING ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX
☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☒ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**
11962.00001

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida